sel have been diligent and painstaking in their preparation. And after such a presentment there is a certain fascination in investigating and arriving at a conclusion, but beyond the interesting law questions involved, when it comes, by reason of our conclusions, to fixing a penalty and passing sentence it becomes an unpleasant and distasteful duty.

A penalty, which in the mind of the public, is so severe as to appear oppressive and unjust would fail and nullify the purpose of this proceeding. It is not so much the severity of the punishment that deters, but the fact. In this case it is much more the wisdom and justice of our conclusions that will command and insure respect for this tribunal than the penalty inflicted. There is no desire to be oppressive or work hardship upon this defendant, George F. Burba, who may not have fully comprehended the impropriety of his act. And the judgment and sentence of this court should be that he pay the costs of this proceeding and be fined in the sum of $—.

---

## ACTION FOR DAMAGES AGAINST A CITY CONTRACTOR AND HIS SURETY.

### Common Pleas Court of Ashtabula County.

### CITY OF CONNEAUT v. H. A. STRAUSS ET AL.

#### Decided, 1910.

*Municipal Corporations—Action for Breach of Contract for Building a Sewer—Plea of Conformity With Provisions of the Burns Law Not Necessary, When—Optional Whether a City Shall Complete an Abandoned Contract by Day Labor or by a New Contract or by Both Methods.*

1. In an action on the bond of the contractor for a sewer improvement, the cost of which is payable by special assessment on the abutting land, the petition is not subject to demurrer for failure to allege the certification, as required by Section 3806, General Code, that funds sufficient to meet the cost of the proposed improvement are in the treasury and unappropriated, where the petition avers the passage of the resolutions and ordinances prescribed by Section 3878 *et seq.*, the advertising for bids, the letting of the contract, default by the contractor, notice to his sureties and

proceedings by the city to complete the contract; but it is sufficient in such a case if the petition allege that the bonds to pay the entire cost of the improvement has been authorized.

2. A provision in a contract for a public improvement authorizing the municipality, upon default of the contractor, to complete the work either by day labor or by contract as it may elect, is an option to complete the contract in either manner, or partly by one method and partly by the other; and the fact that after the abandonment of the job by the contractor the city began to do the work by day labor does not preclude the reletting of the work remaining to another contractor, especially where further material will be required to complete it.

3. The formalities and requisites of an original letting are not necessary in the case of the reletting of a contract for the completion of a public improvement after default by the original contractor.

*E. D. Loose* and *M. R. Smith*, for plaintiff.
*Heinlein & Armstrong* and *Perry & Hitchcock*, contra.

ROBERTS, J.

Heard on demurrer to the third amended petition.

The allegations of the third amended petition, so far as necessary to state for an understanding of the issues raised, are as follows: that on June 25, 1906, the plaintiff duly passed a resolution, No. 572, whereby it was declared necessary to construct certain sewers and appurtenances thereto, in said city (General Code, 3878); and that one-fiftieth part of the entire cost of said sewer improvement, together with all intersections, should be assumed and paid by the plaintiff (General Code, 3820), and the remainder of the cost thereof to be assessed upon abutting land; that on July 9, 1906, the plaintiff duly passed an ordinance, No. 579, whereby it was determined to proceed with the construction of the sewers (General Code, 3879); and in which it was also provided that one-fiftieth of the entire cost of said sewer improvement should be paid by the plaintiff, and that the board of public service should make and execute a contract for the construction of said sewer improvement to the lowest and best bidder therefor, after advertisement according to law (General Code, 3880); that proper advertisement was duly made, and on September 1, 1906, the defendant, H. A. Strauss, submitted a bid for the construction of said improvement, which was duly adjudged the lowest and best bid therefor.

Copy of the plans and specifications for said improvement is attached to the petition, marked "Exhibit A"; and copy of the proposal is attached, marked "Exhibit B."

On September 1, 1906, the defendant, Strauss, entered into a written contract with the plaintiff, a copy of which is attached, marked "Exhibit C," whereby it was provided that the defendant, Strauss, should furnish all materials and labor for the construction and completion of said improvement, in conformity with the plans and specifications thereof, then on file in the office of the city engineer; and also that he should perform the work in a substantial and workmanlike manner, in strict accordance with the directions which might from time to time be given by the city engineer, or his duly authorized assistants.

It was further provided in said specifications that the construction of said improvement should begin within fifteen days after the award of the contract, and be carried on regularly and uninterruptedly so as to secure its full completion by December 15, 1906. And that if the defendant, Strauss, should fail to prosecute said work with reasonable diligence, or should abandon it, and it should appear to the plaintiff that he was willfully violating any of the conditions therein specified, or negligent in filling them, then the plaintiff, at its option, might take possesson of the materials and appliances delivered in the city of Conneaut for the work, and proceed to complete the work, either by day labor or by contract, as it might choose; and all costs of said work and all damages the plaintiff might sustain by reason thereof, should be deducted from the percentages of the estimates of the defendant, Strauss, which had been retained; and if the sums so retained by the plaintiff were not sufficient to complete the work and to cover the damages specified, the plaintiff should then hold the bond given to secure the performance of the contract liable for the deficit.

That on September 1, 1906, the defendant, Strauss, as principal, and the defendant, the Citizens Trust & Guaranty Company, of Parkersburg, West Virginia, as surety, executed and delivered to the plaintiff their bond, a copy of which is attached, marked "Exhibit D," in the penal sum of $10,000, the condition of which was for the honest and faithful performance of the obligations of said contract.

That the defendant, Strauss, entered upon the performance of said contract, and on or about November 12, 1906, willfully abandoned the work, refusing and failing thereafter, without excuse and without fault on the part of the plaintiff, to proceed further under said contract, or with the performance of said work.

The plaintiff further alleges that a large part of the work done by the defendant, Strauss, was so carelessly and improperly performed that it was necessary for the plaintiff to do a large amount of work in repairing and making useful the work performed by the defendant, Strauss.

That the defendant, the Citizens Trust & Guaranty Company, was notified and immediately made cognizant of the fact that the defendant, Strauss, had abandoned his contract, and refused to further perform work under it.

That the plaintiff thereafter proceeded by day labor to complete the construction of said sewer for some time, and expended in that way $2,082.24, and then believing that the work could be better and more economically performed by contract on a percentage basis, entered into a contract with one Roy L. Williams, whereby it was agreed that said Williams should furnish all labor, materials and tools necessary for the full completion of said improvement, and assume full management and responsibility therefor; in consideration of which the plaintiff agreed to repay said Williams all sums he should reasonably expend in labor, together with a commission on the sums so by him expended.

Then follow other allegations in the petition showing the completion of the contract, resulting in an expense to the city in the sum of $4,766.17, over and above the contract price of the defendant, Strauss, which the city seeks to recover as damages.

The Citizens Trust & Guaranty Company has filed a demurrer, which is now under consideration, to this third amended petition, on the grounds that it does not state facts sufficient to constitute a cause of action.

The first contention of this defendant in support of the demurrer is, that the petition does not allege that the auditor had certified to the council that the money required for the contract

was in the treasury to the credit of the fund from which it was to be drawn, and not appropriated for any other purpose (General Code, 3806).

It is now conceded by counsel for the plaintiff that the petition is deficient in this respect, and has asked for leave to file a fourth amended petition herein, and have inserted allegations, it is said, to the effect that bonds of the plaintiff city had been authorized to be issued to pay the entire cost and expense of the improvement. It is desired, however, by counsel that other reasons urged, whereby it is claimed this petition is defective, be at this time considered.

In the case of *Cincinnati* v. *Holmes*, 56 Ohio St., 104, it is said in the second paragraph of the syllabus:

"The provisions of Revised Statutes, 2702 (General Code, 3806), known as the Burns law, do not apply to the act passed May 4, 1891 (88 O. L., 527), authorizing villages of a certain class to make certain street improvements, and defray the costs and expenses thereof by issuing bonds and levying taxes and assessments as therein provided."

In the opinion in this case on page 113, it is said:

"The plain purpose of the Burns law was to prevent the incurring of an indebtedness by a municipal corporation beyond the ordinary resources of its revenue and whereby an annual excess of indebtedness will be created over these revenues. But it has not the vigor of a constitutional provision, and can not therefore apply to a statute that not only authorizes the making of a particular kind of improvement, but also provides the mode and manner in which the funds are to be raised to defray the costs and expense of it. Under this statute the burden of the tax-payer will neither be increased nor diminished by the time when the contract is let for the work of the improvement. The making of the contract has reference, for its performance on the part of the village, to a fund to be raised by taxation and assessment, authorized by the act for the particular purpose, and which can be applied to no other. These considerations show the inapplicability of the Burns law to improvements made under a statute like the one in question."

In *Emmert* v. *Elyria*, 74 Ohio St., 185, the second paragraph of the syllabus reads as follows:

"Sections 45 and 45a of the municipal code (Revised Statutes, 1536-205 and 1536-20a; General Code, 3806-3810), providing in substance that no contract involving the expenditure of money shall be entered into unless the auditor of the corporation shall first certify to council that the money required for the contract is in the treasury to the credit of the fund from which it is to be drawn and not appropriated for any other purpose and that a contract entered into contrary to such provision shall be void and that the money to be derived from lawfully authorized bonds or notes sold and in process of delivery shall be deemed in the treasury and in the appropriate fund, do not apply to contracts for street improvement, when bonds have been authorized by the municipality to be issued to pay the entire estimated cost and expense of the improvement."

The fourth paragraph of the syllabus in the case of *Kohler Brick Co.* v. *Toledo,* 10 C.C.(N.S.), 137, reads as follows:

"Where a bond issue is provided for the payment of the whole cost of sewer construction no certificate from the auditor, that funds are on hand to pay for the sewer, is required."

The additional allegation thus desired to be made by the plaintiff, would seem to relieve its petition from the obligation thus made as not stating a cause of action, by reason of failure to allege the filing of the certificate.

In the next place it is claimed by the defendant that no cause of action is shown in the petition, for the reason that it is not claimed that the entering into of the contract with Williams for the completion of the work, was made by observing all of the conditions and formalities requisite and provided by law for the original letting of the contract. That is to say, it is claimed by the defendant that in the reletting of the contract for its completion, the same proceedings should have been observed in the way of advertising and all other statutory requirements, as were necessary in the awarding of the original contract to the defendant, Strauss.

It will be remembered that the specifications which are a part of the contract, and the performance of which is secured by the bond provided on the abandonment of the work by the defendant, Strauss, the plaintiff may at its option proceed to complete the work, either by day labor or by contract, as it may

choose, and payment of the expense thereof shall be secured by the bond. In the absence of this provision, the defendant demurring, having agreed by the bond that the defendant, Strauss, should faithfully perform his contract, presumably would be liable for such general damages, as the plaintiff might incur by reason of the default of the defendant, Strauss. The parties saw fit, however, to contract as to how the city might proceed in case of such default; and the allegations of the petition intimate that it proceeded for a time by day labor and then subsequently let a contract to Williams for the completion of the work, without observing any of the formalities requisite for the legality of the original contract.

It is said in behalf of the demurrer that the said contract should be construed as meaning a legal contract, that is, such contract as the city is authorized to make observing preliminary requirements, and should not be understood to mean a simple contract as might be made between individuals.

No authorities have been cited by counsel upon either side, upon this question, and I am not able to find that this proposition has been considered in any reported case in this state.

The syllabus in the case reported in *In re Leeds*, 53 N. Y., 400, reads as follows:

"The provisions of the act in reference to sewerage and drainage in the city of Brooklyn, which authorize the board of water and sewerage commissioners to let the work of constructing a sewer to the lowest bidder, and prohibit them from proceeding with the construction except upon advertisement for proposals, etc., apply only to the contract for the original construction of the sewers, and do not require a second advertisement for bidders in case of non-performance by the contractor. The liability of the contractor and his sureties was deemed an adequate indemnity against any additional expense in completing the work."

In the opinion of the court, on page 403, it is said:

"The work may have been left in a dangerous condition, so that the delay of advertising would be injudicious, or the amount of work to be performed might be so small as to render it improper to advertise."

In the case of *Camden* v. *Ward*, 67 N. J. Law ( 38 Vroom), 558, the syllabus reads as follows:

"A contract between the defendant Ward and the city of Camden for the paving of a street with asphalt provided that if the defendant stopped the work before completion, the commissioner of streets of the city might procure the necessary materials and labor, and proceed with the construction of the work according to the plans and specifications, and the expense so incurred should be chargeable by the city against the defendant and his surety, the other defendant. *Held:* (a) That, Ward having left the work incomplete, the mode of procuring the labor and materials necessary for completion was committed to the discretion of the street commissioner, and that his failure to procure them at a reasonable cost formed no defense against the city's claim on the defendants for the expense actually incurred; (b) that a city ordinance requiring 'any department under the city government, or any committee or board appointed by the city council,' to advertise for proposals before binding the city for work or materials, was not applicable to such contract; (c) that, if the defendants had the right to have any particular mode adopted for procuring the necessary labor and materials, their failure to object to the method actually chosen, when they were kept informed, by timely notice from the commissioner, of each step taken by him in the premises, was a waiver of that right."

In the case of *Milwaukee* v. *Shailer*, 84 Fed. Rep., 106, this action arose upon a contract for the construction of a water tunnel, which contract was abondoned. It is said in the opinion:

"If the original line was practicable, the board had its choice to finish the tunnel on that line and to look to the contractors for the expense in excess of the contract price, or to treat the contract as at an end and do with the work as it saw fit."

In the case of *Powers* v. *Yonkers*, 114 N. Y., 145, the syllabus reads as follows:

"V entered into a contract with defendant city to improve a street, the work to be finished in 100 days. The contract provided that it should be the duty of the city engineer to report to the council whenever V should refuse or neglect to supply a sufficiency of workmen or materials, or should fail to prosecute the work with proper diligence, or should omit to fulfill any provision of the contract; that, if the council should be satisfied

that such report was correct, it could declare the contract 'to be voided and forfeited, broken and violated,' and could employ other persons to finish the work according to the contract at V's expense. Two years later the engineer reported to the council that the time provided for the completion of the contract had long since expired, and that V had neglected to perform it in certain respects, whereupon the council notified V. that, unless he resumed the work and prosecuted it with diligence, the city would consider the contract forfeited, and would employ others to complete the work at his expense. A resolution was afterwards passed declaring the forfeiture for V.'s failure to complete the work, and the city employed others to complete it, and some of the work done by V was taken down and rebuilt. No notice was given by the city to V that any of the work he had actually done would be taken down or changed. *Held:* That the city's power to complete the contract was not limited to the ground upon which it was declared forfeited, but extended to all matters necessary to the execution of the contract according to the plans and specifications, including the making perfect anything V had left imperfect.''

From these authorities, and what appears to me to be a fair construction of the language used by the contracting parties, I reach the conclusion that they did not contemplate in case of the abandonment of the contract, that it should be the duty of the plaintiff city to readvertise for bids for the completion of the work and thus incur the presumable danger, expense and inconvenience of having its streets remain in such dismantled condition as they might be in case the contract be abandoned on the partial completion of the work, until all statutory formalities involving long delay, might be complied with.

It is further claimed in behalf of the demurrer, that the city only had a right to complete the work by day labor or by contract, and that having elected to proceed in one way it could not afterwards shift to the other manner. My understanding of the language used in the specifications is that reference to the option does not mean an option between day labor and contract work, but the contract having been abandoned the city might exercise an option to take possession of materials and appliances delivered in Conneaut for the work, and proceed to complete the work, and in so proceeding it might do so by day labor or by contract.

In view of the fact that the completion of the work required the furnishing of a large amount of materials, it certainly was within the contemplation of the parties, that something more was necessary to complete the improvement than simply day labor. That there would necessarily have to be a contracting for the purchase of materials. The city having the right to proceed either by day labor or by contract, it is not apparent to me why the language used is not fairly susceptible of such construction as gave it a right to hire labor in part and purchase materials and award a contract for the remainder of the work, as might under the peculiar circumstances resulting from the violation of the contract by the defendant, Strauss, be found most expeditious and advantageous.

The conclusion is thus reached that these objections to the petition involving the manner of the performance of the work, are not well founded and the demurrer should be overruled.